**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 25-cv-12484 |
| BRAVO EXPRESS TRANSPORTATION CO., a corporation; MICHAEL E. COLLINS, an individual; TOTAL QUALITY LOGISTICS, LLC, a limited liability company; KRISTAN ADAIR BASS and KELSI ANN BASS, as Independent Co-Administrators of the Estate of ROBERT EDWARD BASS, deceased; and KELSI ANN BASS and RODNEY TODD NORTON, as Independent Co-Administrators of the Estate of AMANDA NORTON BASS, deceased; and JON BRANDON EDWARDS, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, Pennsylvania Manufacturers' Association Insurance Company

("PMAIC"), by and through its attorneys, TRAUB LIEBERMAN STRAUS AND SHREWSBERRY, LLP, and

for its Complaint for Declaratory Judgment against the Defendants Bravo Express Transportation

Co.; Michael E. Collins; Total Qualify Logistics, LLC; Kristan Adair Bass and Kelsi Ann Bass, as

Independent Co-Administrators of the Estate of Robert Edward Bass, deceased; Kelsi Ann Bass

and Rodney Todd Norton, as Independent Co-Administrators of the Estate of Amanda Norton

Bass, deceased; and Jon Brandon Edwards (collectively, where appropriate, the "Defendants"),

alleges the following:

### NATURE OF THE ACTION

1.      PMAIC is an insurance company that issued a policy of insurance providing

commercial general liability coverage to "PKA Trucking, Inc." as the named insured, bearing

1

policy number 302301-9189697Y, for the effective period September 27, 2023 to September 27, 2024 (the "PKA Policy").

2.      PMAIC also issued a policy of insurance providing commercial general liability coverage to "Bravo Express Transportation Co." as the named insured, bearing policy number 302301-9141599Y, for the effective period December 23, 2023 to December 23, 2024 (the "Bravo Policy").

3.      PMAIC brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to obligations claimed to be owed by PMA to Bravo Express Transportation, Co. ("Bravo"), Michael E. Collins ("Collins") and Total Quality Logistics, LLC ("TQL") in connection with the underlying lawsuit styled, *Kristan Adair Bass, et al. v. Michael Earl Collins, et al.*, pending under Case No. 2025L006617, in the Circuit Court of Cook County, Illinois (the "Underlying Lawsuit").

4.      There exists an actual controversy among the parties concerning their respective rights, duties and obligations under and pursuant to the PKA Policy and Bravo Policy.

5.      PMAIC has no adequate remedy at law and, therefore, desires a judicial determination of the parties' rights, duties and obligations under and pursuant to the PKA Policy and Bravo Policy. A judicial determination is necessary and appropriate at this time so that the parties may ascertain their rights, duties and obligations under and pursuant to the PKA Policy and Bravo Policy in connection with the Underlying Lawsuit.

## THE PARTIES

6.      PMAIC is, and at all times relevant, has been a corporation organized under the laws of Pennsylvania, with its principal place of business located in Blue Bell, Pennsylvania.

7.     Bravo is, and at all times relevant, has been a corporation organized under the laws of Illinois, with its principal place of business located in Arlington Heights, Illinois.

8.     Collins is, and at all times relevant, has been an individual domiciled in Chicago, Illinois.

9.     TQL is, and at all times relevant, has been a limited liability company organized under the laws of Illinois, with its principal place of business located in Cincinnati, Ohio.

10.     TQL's members are (a) KMB Holdings LLC, a limited liability company organized under the laws of Ohio, with its principal place of business located in Cincinnati, Ohio. KMB Holdings LLC's members are Kerry Byrne and Margaret Byrne, along with Ohio Trusts of which Margaret Byrne is the sole beneficiary, all of whom are individuals domiciled in Ohio; (b) KGBO Holdings, Inc., a corporation organized under the laws of Ohio, with its principal place of business located in Milford, Ohio; and (c) MJZ Holdings, LLC, a limited liability company organized under the laws of Ohio, with its principal place of business located in Cincinnati, Ohio. MJZ Holdings, LLC's member is Michael Zins, an individual domiciled in Ohio.

11.     Kristan Adair Bass and Kelsi Ann Bass, as Independent Co-Administrators of the Estate of Robert Edward Bass, deceased, are domiciled in Wakulla County, Floria and Bexar County, Texas, respectively, and were appointed as Independent Co-Administrators of the Estate of Robert Edward Bass on May 13, 2025 in the Circuit Court of Cook County, Illinois. Kristan Adair Bass and Kelsi Ann Bass, as Independent Co-Administrators of the Estate of Robert Edward Bass, deceased, are plaintiffs in the Underlying Lawsuit and are joined as defendants herein as necessary parties so that they may be bound by the judgment entered in this case. If Kristan Adair Bass and Kelsi Ann Bass, as Independent Co-Administrators of the Estate of Robert Edward Bass, deceased, execute a stipulation agreeing to be bound by any judgment entered herein, PMAIC will

voluntarily dismiss Kristan Adair Bass and Kelsi Ann Bass, as Independent Co-Administrators of the Estate of Robert Edward Bass, deceased, from this action.

12.     Kelsi Ann Bass and Rodney Todd Norton, as Independent Co-Administrators of the Estate of Amanda Norton Bass, deceased, are domiciled in Bexar County, Texas and Plaquemines Parish, Louisiana, respectively, and were appointed as Independent Co-Administrators of the Estate of Amanda Norton Bass on May 13, 2025 in the Circuit Court of Cook County, Illinois. Kelsi Ann Bass and Rodney Todd Norton, as Independent Co-Administrators of the Estate of Amanda Norton Bass, deceased are plaintiffs in the Underlying Lawsuit and are joined as defendants herein as necessary parties so that they may be bound by the judgment entered in this case. If Kelsi Ann Bass and Rodney Todd Norton, as Independent Co-Administrators of the Estate of Amanda Norton Bass, deceased, execute a stipulation agreeing to be bound by any judgment entered herein, PMAIC will voluntarily dismiss Kelsi Ann Bass and Rodney Todd Norton, as Independent Co-Administrators of the Estate of Amanda Norton Bass, deceased, from this action.

13.     Jon Brandon Edwards is, and at all times relevant, has been an individual domiciled in Mecklenberg, Virginia. Jon Brandon Edwards is a plaintiff in the Underlying Lawsuit and is joined as a defendant herein as a necessary party so that he may be bound by the judgment entered in this case. If Jon Brandon Edwards executes a stipulation agreeing to be bound by any judgment entered herein, PMAIC will voluntarily dismiss Jon Brandon Edwards from this action.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 in that it arises between citizens of different states and the amount in controversy, including the combined cost of defense and alleged liability in the Underlying Lawsuit (in which  the underlying

4

plaintiffs seek an award in excess of $50,000 in each of their sixteen (16) causes of action in the Underlying Lawsuit, which includes six (6) claims arising out of the wrongful death of two people) exceeds the sum or value of $75,000.00, exclusive of costs and interest. In addition, this action is brought pursuant to 28 U.S.C. § 2201.

15.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because events giving rise to the insurance coverage dispute took place in this District.

## GENERAL ALLEGATIONS

### I.     The Underlying Lawsuit

16.     On May 21, 2025, Kristan Adair Bass and Kelsi Ann Bass, as Independent Co-Administrators of the Estate of Robert Edward Bass ("R. Bass"), deceased, Kelsi Ann Bass and Rodney Todd Norton, as Independent Co-Administrators of the Estate of Amanda Norton Bass ("A. Bass"), deceased, and Jon Brandon Edwards ("Edwards") (collectively, the "Underlying Plaintiffs") initiated the Underlying Lawsuit by filing their Complaint at Law against Collins and Bravo. A true and accurate copy of the Complaint is attached hereto as **Exhibit A**.

17.     The Complaint filed in the Underlying Lawsuit identifies TQL as a "Respondent in Discovery."

18.     The Underlying Lawsuit arises out of a vehicle accident occurring on May 31, 2024 (the "Accident").

19.     The Complaint alleges that Collins was a permissive user operating under Bravo's motor carrier number and working as a professional truck driver within the scope and course of duties as an employee, servant and/or agent of Bravo.

20.     The Complaint alleges that Collins caused his semi-tractor and trailer to collide with the vehicles driven by Edwards and R. Bass, causing the vehicles to run off the road and strike two trees.

21.     The Complaint alleges that the semi-tractor and trailer driven by Collins landed on top of the vehicle driven by R. Bass, in which A. Bass was a passenger.

22.     The Complaint asserts the following causes of action: Count I – Negligence – Wrongful Death (Estate of R. Bass v. Collins), Count II – Negligence – Survival (Estate of R. Bass v. Collins), Count III – Vicarious Liability (*Respondeat Superior*) – Wrongful Death (Estate of R. Bass v. Bravo), Count IV – Vicarious Liability (*Respondeat Superior*) – Survival (Estate of R. Bass v. Bravo), Count V – Negligent Training, Monitoring, and Supervision – Wrongful Death (Estate of R. Bass v. Bravo), Count VI - Negligent Training, Monitoring, and Supervision – Survival (Estate of R. Bass v. Bravo), Count VII – Negligence – Wrongful Death (Estate of A. Bass v. Collins), Count VIII – Negligence – Survival (Estate of A. Bass v. Collins), Count IX – Vicarious Liability (*Respondeat Superior*) – Wrongful Death (Estate of A. Bass v. Bravo), Count X – Vicarious Liability (*Respondeat Superior*) – Survival (Estate of R. Bass v. Bravo), Count XI – Negligent Training, Monitoring, and Supervision – Wrongful Death (Estate of A. Bass v. Bravo), Count XII - Negligent Training, Monitoring, and Supervision – Survival (Estate of A. Bass v. Bravo), Count XIII – Negligence (Edwards v. Collins), Count XIV – Vicarious Liability (*Respondeat Superior*) (Edwards v. Bravo), Count XV – Negligent Training, Monitoring, and Supervision (Edwards v. Bravo), Count XVI – Respondents in Discovery (Plaintiffs v. TQL and Bowman).

## II.     The Broker/Carrier Agreement

23.     On October 12, 2020, TQL and PKA Trucking, Inc. entered into a "Broker/Carrier Agreement," in which PKA Trucking, Inc. agreed to provide certain transportation services for TQL (the "Agreement"). A true and accurate copy of the Agreement is attached hereto as **Exhibit B**.

24.     The Agreement contains a Paragraph 6 titled "Insurance," which provides, in relevant part, as follows:

> 6.     **INSURANCE.** At all times during the Term, CARRIER will maintain in effect the following types and amounts of insurance coverage from reliable insurance companies having an AM Best rating of A-VII or better: Automobile ("Auto") liability $1,000,000; motor vehicle (including hired and non-owned vehicles) $1,000,000, which includes coverage for environmental damages, cleanup, and remediation arising out of the release or discharge of HAZMAT; cargo damage/loss $100,000; and workers' compensation with limits required by applicable state law. All such insurance will be written and be required to respond and pay prior to any other available coverage of BROKER or CUSTOMERS. CARRIER will also comply with the following terms.
>
> * * *
>
> b.     CARRIER will furnish BROKER or its designee with a certificate of insurance, in a form satisfactory to BROKER, to prove that each coverage specified in this Section is in effect and properly maintained and that neither BROKER nor its CUSTOMERS are obligated to pay premiums for any such insurance. Each insurance policy will name BROKER as additional insured and loss payee, with a waiver of subrogation in favor of BROKER and CUSTOMERS, and each certificate of insurance will name BROKER or its designee as certificate holder. In addition, when available, CARRIER will obtain an automatic additional insured endorsement which will apply to BROKER. CARRIER must provide BROKER with at least 30 days advance notice prior to cancellation, change, or non-renewal.
>
> * * *

25.     The Agreement also contains a Paragraph 10 titled "Indemnification," which provides, as follows:

> 10.     **INDEMNIFICATION**. CARRIER agrees to defend, indemnify, reimburse, and hold BROKER and CUSTOMERS harmless from and

against any and all claims or liability (including, without limitation, Workers' Compensation claims), arising out of or in any way related to CARRIER'S negligence, willful misconduct, acts, omissions, or performance, failure to perform, or beach [*sic*] of this Agreement, including, without limitation, claims or liability for cargo loss and damage, theft, delay, damage to property, and bodily injury and/or death. Except for Workers' Compensation claims, CARRIER will not be required to indemnify BROKER or CUSTOMERS for claims or liability that are directly and solely caused by the negligence or willful misconduct of that party.

### III. The PKA Policy

26. PMAIC issued the PKA Policy to "PKA Trucking, Inc." as the named insured, bearing policy number 302301-9189697Y, for the effective period September 27, 2023 to September 27, 2024. A true and accurate copy of the Policy is attached hereto as **Exhibit C**.

27. The Insuring Agreement of Coverage A (Bodily Injury And Property Damage Liability) in the PKA Policy provides, in relevant part, as follows:

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. [* * *]

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

28. Section II – Who Is An Insured of the PKA Policy provides, in relevant part, as follows:

**1.** If you are designed in the Declarations as:

* * *

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; [* * *]

* * *

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

29. Pursuant to the "Exclusion – Volunteer Workers" endorsement, Section II – Who Is An Insured in the PKA Policy is modified as follows:

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. [* * *]

30. The PKA Policy contains the following definitions:

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing agreement.

9

10.     "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

18.     "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

     a.     An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

     b.     Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19.     "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20.     "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

31.     The PKA Policy contains an "Additional Insureds By Contract" endorsement,

which provides, in relevant part, as follows:

A.     **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract that such person or organization be added as an additional insured on your policy.

     1.     Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

          a.     Your acts or omissions; or

          b.     The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

 **2.**   The insurance afforded to such additional insured:

  **a.**   Does not apply to your operations for such additional insured that are completed;

  **b.**   Only applies to the extent permitted by law; and

  **c.**   Will not be broader than that which you are required by the written contract to provide for such additional insured and is subject to the other provisions of this policy.

32.   Pursuant to the "Exclusion – Volunteer Workers" endorsement, the PKA Policy contains an Exclusion g. (Aircraft, Auto Or Watercraft), which precludes coverage, in relevant part, as follows:

 **g.**   **Aircraft, Auto Or Watercraft**

  "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft:

  **(1)**   Owned or operated by or rented or loaned to any insured; or

  **(2)**   Operated by any "volunteer worker" in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business.

  Use includes operation and "loading or unloading".

  This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

33.   The PKA Policy defines "auto" as follows:

**2.**   "Auto" means:

      **a.**      A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

      **b.**      Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

## IV.    The Bravo Policy

34.    PMAIC issued the Bravo Policy to "Bravo Express Transportation Co." as the named insured, bearing policy number 302301-0141599Y, for the effective period December 23, 2023 to December 23, 2024. A true and accurate copy of the Bravo Policy is attached hereto as **Exhibit D**.

35.    The Insuring Agreement of Coverage A (Bodily Injury And Property Damage Liability) in the Bravo Policy provides, in relevant part, as follows:

**1.**    **Insuring Agreement**

      **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. [* * *]

      **b.**      This insurance applies to "bodily injury" and "property damage" only if:

            **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

36.    The Bravo Policy defines "suit" as follows:

**18.**    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

      **a.**    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

      **b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

37.    The Bravo Policy contains an "Additional Insureds By Contract" endorsement, which provides, in relevant part, as follows:

    **A.**    **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract that such person or organization be added as an additional insured on your policy.

      **1.**    Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

          **a.**    Your acts or omissions; or

          **b.**    The acts or omissions of those acting on your behalf;

      in the performance of your ongoing operations for the additional insured.

      **2.**    The insurance afforded to such additional insured:

          **a.**    Does not apply to your operations for such additional insured that are completed;

          **b.**    Only applies to the extent permitted by law; and

          **c.**    Will not be broader than that which you are required by the written contract to provide for such additional insured and is subject to the other provisions of this policy.

38.     Pursuant to the "Exclusion – Volunteer Workers" endorsement, the Bravo Policy contains an Exclusion g. (Aircraft, Auto Or Watercraft), which precludes coverage, in relevant part, as follows:

> **g.     Aircraft, Auto Or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft:
>
> **(1)**     Owned or operated by or rented or loaned to any insured; or
>
> **(2)**     Operated by any "volunteer worker" in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business.
>
> Use includes operation and "loading or unloading".
>
> This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

39.     The Bravo Policy defines "auto" as follows:

> **2.**     "Auto" means:
>
> **a.**     A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
>
> **b.**     Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
>
> However, "auto" does not include "mobile equipment".

**COUNT I – DECLARATORY JUDGMENT**
**(No Duty To Defend Or Indemnify Bravo**
**In The Underlying Lawsuit Under The PKA Policy)**

40. PMAIC adopts and realleges the allegations in Paragraphs 1 through 39 of its Complaint as and for Paragraph 40, as if fully set forth herein.

41. The Underlying Lawsuit seeks relief against defendants, Bravo and Collins.

42. PMAIC issued the PKA Policy to "PKA Trucking Inc" as the named insured.

43. Pursuant to Paragraph 1.d. of Section II – Who Is An Insured of the PKA Policy (a) PKA Trucking. is an insured, (b) PKA Trucking, Inc.'s "executive officers" and directors are insureds, but only with respect to their duties as PKA Trucking's officers or directors, and (c) PKA Trucking's stockholders are also insureds, but only with respect to their liability as stockholders.

44. Pursuant to Paragraph 3 of Section II – Who Is An Insured of the PKA Policy, an organization PKA Trucking newly acquires or forms, other than a partnership, joint venture or limited liability company, and over which PKA Trucking maintains ownership or majority interest, will qualify as a Named Insured if there is no similar insurance available to that organization, provided: (a) coverage is afforded only until the 90th day after PKA Trucking acquires or forms the organization or the end of the policy period, whichever is earlier; and (b) Coverage A does not apply to "bodily injury" or "property damage" that occurred before PKA Trucking acquired or formed the organization.

45. Pursuant to Section II – Who Is An Insured of the PKA Policy no person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

46. Bravo is not an "executive officer," director or stockholder of PKA Trucking.

47. Upon information and belief, PKA Trucking neither acquired nor formed Bravo nor maintains ownership or majority interest in Bravo.

48.     As Bravo does not qualify as an insured under Section II – Who Is An Insured in the PKA Policy, Bravo is, therefore, not entitled to coverage under the PKA Policy in relation to the Underlying Lawsuit, and PMAIC has no duty to defend Bravo in the Underlying Lawsuit or indemnify Bravo for any settlement or judgment entered therein.

49.     In the alternative, and to the extent Bravo qualifies as an insured under the PKA Policy, which PMAIC expressly denies, coverage under the PKA Policy is subject to an Exclusion g. (Aircraft, Auto Or Watercraft), as amended by the "Exclusion – Volunteer Workers" endorsement, which precludes coverage for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft (1) owned or operated by or rented or loaned to any insured or (2) operated by any "volunteer worker" in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business.

50.     The PKA Policy defines "auto" to mean "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."

51.     The vehicle driven by Collins at the time of the accident qualifies as an "auto," as that term is defined by the PKA Policy.

52.     Because the Underlying Lawsuit alleges that the damages suffered by the Underlying Plaintiffs arose out of the maintenance, use or entrustment to others of any "auto" owned or operated by or rented to any insured, to the extent Bravo qualifies as an insured under the PKA Policy, which PMAIC expressly denies, Exclusion g. applies to preclude coverage for Bravo in relation to the Underlying Lawsuit.

53.     Because Exclusion g. applies to preclude coverage for Bravo in relation to the Underlying Lawsuit, to the extent Bravo qualifies as an insured under the PKA Policy (which PMAIC expressly denies), PMAIC has no duty to defend Bravo in the Underlying Lawsuit or indemnify Bravo for any settlement or judgment entered therein.

54.     An actual controversy exists between PMAIC and Bravo, and, by the terms and provisions of 28 U.S.C. § 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, PMAIC, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the PKA Policy;

b.      Find and declare PMAIC has no duty under the PKA Policy to defend Bravo in the Underlying Lawsuit or indemnify Bravo for any settlement or judgment entered therein; and

c.      Grant PMAIC such other and further relief that the Court deems proper under the facts and circumstances.

### COUNT II – DECLARATORY JUDGMENT
### (No Duty To Defend Or Indemnify Collins
### In The Underlying Lawsuit Under The PKA Policy)

55.     PMAIC adopts and realleges the allegations in Paragraphs 1 through 54 of its Complaint as and for Paragraph 55, as if fully set forth herein.

56.     The Underlying Lawsuit seeks relief against defendants, Bravo and Collins.

57.     PMAIC issued the PKA Policy to "PKA Trucking Inc" as the named insured.

58.     Pursuant to Paragraph 1.d. of Section II – Who Is An Insured in the PKA Policy (a) PKA Trucking. is an insured, (b) PKA Trucking, Inc.'s "executive officers" and directors are

insureds, but only with respect to their duties as PKA Trucking's officers or directors, and (c) PKA Trucking's stockholders are also insureds, but only with respect to their liability as stockholders.

59.     Pursuant to the Exclusion – Volunteer Workers" endorsement in the PKA Policy, Section II – Who Is An Insured is modified to include as an insured PKA Trucking's "employees," other than its "executive officers" but only for acts within the scope of their employment by PKA Trucking or while performing duties related to the conduct of PKA Trucking's business.

60.     The PKA Policy defines "executive officer" to mean "a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing agreement."

61.     The PKA Policy defines "employee" to include a "leased worker," defined as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business," but does not include "temporary worker," defined as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions."

62.     At all times relevant, Collins has not been an "executive officer," director or stockholder of PKA Trucking.

63.     At all times relevant, Collins has not been an "employee" of PKA Trucking and was not acting within the scope of his employment by PKA Trucking or performing duties related to the conduct of PKA Trucking's business at the time of the accident.

64.     As Collins does not qualify as an insured under Section II – Who Is An Insured in the PKA Policy, Collins is, therefore, not entitled to coverage under the PKA Policy in relation to the Underlying Lawsuit, and PMAIC has no duty to defend Collins in the Underlying Lawsuit or indemnify Collins for any settlement or judgment entered therein.

65.     In the alternative, and to the extent Collins qualifies as an insured under the PKA Policy, which PMAIC expressly denies, coverage under the PKA Policy is subject to an Exclusion g. (Aircraft, Auto Or Watercraft), as amended by the "Exclusion – Volunteer Workers" endorsement, which precludes coverage for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft (1) owned or operated by or rented or loaned to any insured or (2) operated by any "volunteer worker" in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business.

66.     The PKA Policy defines "auto" to mean "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."

67.     The vehicle driven by Collins at the time of the accident qualifies as an "auto," as that term is defined by the PKA Policy.

68.     Because the Underlying Lawsuit alleges that the damages suffered by the Underlying Plaintiffs arose out of the maintenance, use or entrustment to others of any "auto" owned or operated by or rented to any insured, to the extent Collins qualifies as an insured under the PKA Policy, which PMAIC expressly denies, Exclusion g. applies to preclude coverage for Collins in relation to the Underlying Lawsuit.

69.     Because Exclusion g. applies to preclude coverage for Collins in relation to the Underlying Lawsuit, to the extent Collins qualifies as an insured (which PMAIC expressly denies), PMAIC has no duty to defend Collins in the Underlying Lawsuit or indemnify Collins for any settlement or judgment entered therein.

70.     An actual controversy exists between PMAIC and Collins, and, by the terms and provisions of 28 U.S.C. § 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, PMAIC, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the PKA Policy;

b.     Find and declare PMAIC has no duty under the PKA Policy to defend Collins in the Underlying Lawsuit or indemnify Collins for any settlement or judgment entered therein; and

c.     Grant PMAIC such other and further relief that the Court deems proper under the facts and circumstances.

### COUNT III – DECLARATORY JUDGMENT
#### (No Duty To Defend Or Indemnify TQL
#### In The Underlying Lawsuit Under The PKA Policy)

71.     PMAIC adopts and realleges the allegations in Paragraphs 1 through 70 of its Complaint as and for Paragraph 71, as if fully set forth herein.

72.     The Insuring Agreement of Coverage A (Bodily Injury And Property Damage Liability) in the PKA Policy provides that PMAIC will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage."

73.     The PKA Policy defines "suit" to mean "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged" and includes "[a]n arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent" and "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent."

74. TQL is named in the Underlying Lawsuit as a "Respondent in Discovery" under Count XVI "Respondents in Discovery."

75. In Count XVI, the Underlying Lawsuit alleges that TQL was named as a Respondent in Discovery, as it "may have information essential to determining potential liability in this matter."

76. In Count XVI, the Underlying Lawsuit alleges "Plaintiffs reserve the right to convert said Respondents in Discovery into named Defendants in accordance with 735 ILCS 5/2-402."

77. Plaintiffs do not seek any relief against TQL in the Underlying Lawsuit.

78. Because the Underlying Lawsuit is not a "suit," as the term is defined in the PKA Policy, as respects TQL and does not seek damages for "bodily injury" or "property damage" caused by an "occurrence" against TQL, PMAIC has no duty to defend TQL under the PKA Policy in connection with the Underlying Lawsuit.

79. In the alternative, and to the extent, PMAIC's duty to defend TQL is triggered, the PKA Policy contains an "Additional Insureds By Contract" endorsement which includes as an additional insured any person or organization for whom PKA Trucking is performing operations when PKA Trucking and such person or organization have agreed in writing in a contract that such person or organization be added as an additional insured on PKA Trucking's policy, but such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by PKA Trucking's acts or omissions or those acts or omissions of those acting on PKA Trucking's behalf in the performance of PKA Trucking's ongoing operations for the additional insured.

80.     The Underlying Lawsuit does not allege that the Underlying Plaintiffs' injuries and damages were caused, in whole or in part, by PKA Trucking's acts or omissions (or the acts or omissions of those acting on PKA Trucking's behalf) in the performance of PKA Trucking's ongoing operations for TQL.

81.     Because TQL does not qualify as an additional insured under the "Additional Insureds By Contract" endorsement in the PKA Policy, PMAIC has no duty to defend TQL in the Underlying Lawsuit or indemnify TQL for any settlement or judgment entered therein.

82.     In the alternative, and to the extent (a) PMAIC's duty to defend TQL is triggered and (b) Bravo and/or Collins qualify as insureds under the PKA Policy, both of which PMAIC expressly denies, coverage under the PKA Policy is subject to an Exclusion g. (Aircraft, Auto Or Watercraft), as amended by the "Exclusion – Volunteer Workers" endorsement, which precludes coverage for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft (1) owned or operated by or rented or loaned to any insured or (2) operated by any "volunteer worker" in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business.

83.     The PKA Policy defines "auto" to mean "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."

84.     The vehicle driven by Collins at the time of the accident qualifies as an "auto," as that term is defined by the PKA Policy.

85.     Because the Underlying Lawsuit alleges that the damages suffered by the Underlying Plaintiffs arose out of the maintenance, use or entrustment to others of any "auto" owned or operated by or rented to any insured, to the extent Bravo and/or Collins qualifies as an insured under the PKA Policy, which PMAIC expressly denies, Exclusion g. applies to preclude coverage for TQL in relation to the Underlying Lawsuit.

86.     Because Exclusion g. applies to preclude coverage for TQL in relation to the Underlying Lawsuit, to the extent Bravo and/or Collins qualifies as an insured (which PMAIC expressly denies), PMAIC has no duty to defend TQL in the Underlying Lawsuit or indemnify Collins for any settlement or judgment entered therein.

87.     An actual controversy exists between PMAIC and TQL, and, by the terms and provisions of 28 U.S.C. § 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, PMAIC, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the PKA Policy;

b.      Find and declare PMAIC has no duty under the PKA Policy to defend TQL in the Underlying Lawsuit or indemnify TQL for any settlement or judgment entered therein; and

c.      Grant PMAIC such other and further relief that the Court deems proper under the facts and circumstances.

### COUNT IV – DECLARATORY JUDGMENT
### (No Duty To Defend Or Indemnify Bravo
### In The Underlying Lawsuit Under The Bravo Policy)

88.     PMAIC adopts and realleges the allegations in Paragraphs 1 through 87 of its Complaint as and for Paragraph 88, as if fully set forth herein.

89.     Coverage under the Bravo Policy is subject to an Exclusion g. (Aircraft, Auto Or Watercraft), as amended by the "Exclusion – Volunteer Workers" endorsement, which precludes coverage for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft (1) owned or operated by or rented or loaned to any insured or (2) operated by any "volunteer worker" in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business.

90.     The Bravo Policy defines "auto" to mean "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."

91.     The vehicle driven by Collins at the time of the accident qualifies as an "auto," as that term is defined by the PKA Policy.

92.     Because the Underlying Lawsuit alleges that the damages suffered by the Underlying Plaintiffs arose out of the maintenance, use or entrustment to others of any "auto" owned or operated by or rented to any insured Exclusion g. applies to preclude coverage for Bravo under the Bravo Policy in relation to the Underlying Lawsuit.

93.     Because Exclusion g. applies to preclude coverage for Bravo under the Bravo Policy in relation to the Underlying Lawsuit, PMAIC has no duty to defend Bravo in the Underlying Lawsuit or indemnify Bravo for any settlement or judgment entered therein.

94.     An actual controversy exists between PMAIC and Bravo, and, by the terms and provisions of 28 U.S.C. § 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure, this

Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, PMAIC, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Bravo Policy;

b.      Find and declare PMAIC has no duty under the Bravo Policy to defend Bravo in the Underlying Lawsuit or indemnify Bravo for any settlement or judgment entered therein; and

c.      Grant PMAIC such other and further relief that the Court deems proper under the facts and circumstances.

**COUNT V – DECLARATORY JUDGMENT**
**(No Duty To Defend Or Indemnify Collins**
**In The Underlying Lawsuit Under The Bravo Policy)**

95.      PMAIC adopts and realleges the allegations in Paragraphs 1 through 94 of its Complaint as and for Paragraph 95, as if fully set forth herein.

96.      Coverage under the Bravo Policy is subject to an Exclusion g. (Aircraft, Auto Or Watercraft), as amended by the "Exclusion – Volunteer Workers" endorsement, which precludes coverage for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft (1) owned or operated by or rented or loaned to any insured or (2) operated by any "volunteer worker" in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business.

97.      The Bravo Policy defines "auto" to mean "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."

98.     The vehicle driven by Collins at the time of the accident qualifies as an "auto," as that term is defined by the PKA Policy.

99.     Because the Underlying Lawsuit alleges that the damages suffered by the Underlying Plaintiffs arose out of the maintenance, use or entrustment to others of any "auto" owned or operated by or rented to any insured Exclusion g. applies to preclude coverage for Collins under the Bravo Policy in relation to the Underlying Lawsuit.

100.    Because Exclusion g. applies to preclude coverage for Collins under the Bravo Policy in relation to the Underlying Lawsuit, PMAIC has no duty to defend Collins in the Underlying Lawsuit or indemnify Collins for any settlement or judgment entered therein.

101.    An actual controversy exists between PMAIC and Collins, and, by the terms and provisions of 28 U.S.C. § 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, PMAIC, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Bravo Policy;

b.      Find and declare PMAIC has no duty under the Bravo Policy to defend Collins in the Underlying Lawsuit or indemnify Collins for any settlement or judgment entered therein; and

c.      Grant PMAIC such other and further relief that the Court deems proper under the facts and circumstances.

**COUNT VI – DECLARATORY JUDGMENT**
**(No Duty To Defend Or Indemnify TQL**
**In The Underlying Lawsuit Under The Bravo Policy)**

102.    PMAIC adopts and realleges the allegations in Paragraphs 1 through 101 of its Complaint as and for Paragraph 102, as if fully set forth herein.

103.    The Insuring Agreement of Coverage A (Bodily Injury And Property Damage Liability) in the Bravo Policy provides that PMAIC will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage."

104.    The Bravo Policy defines "suit" to mean "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged" and includes "[a]n arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent" and "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent."

105.    TQL is named in the Underlying Lawsuit as a "Respondent in Discovery" under Count XVI "Respondents in Discovery."

106.    In Count XVI, the Underlying Lawsuit alleges that TQL was named as a Respondent in Discovery, as it "may have information essential to determining potential liability in this matter."

107.    In Count XVI, the Underlying Lawsuit alleges "Plaintiffs reserve the right to convert said Respondents in Discovery into named Defendants in accordance with 735 ILCS 5/2-402."

108.    Plaintiffs do not seek any relief against TQL in the Underlying Lawsuit.

109.    Because the Underlying Lawsuit is not a "suit," as the term is defined in the Bravo Policy, as respects TQL and does not seek damages for "bodily injury" or "property damage" caused by an "occurrence" against TQL, PMAIC has no duty to defend TQL under the Bravo Policy in connection with the Underlying Lawsuit.

110.    In the alternative, and to the extent, PMAIC's duty to defend TQL is triggered, the Bravo Policy contains an "Additional Insureds By Contract" endorsement which includes as an additional insured any person or organization for whom Bravo is performing operations when Bravo and such person or organization have agreed in writing in a contract that such person or organization be added as an additional insured on Bravo's policy, but such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by Bravo's acts or omissions or those acts or omissions of those acting on Bravo's behalf in the performance of Bravo's ongoing operations for the additional insured.

111.    Bravo and TQL did not enter into a written contract that requires Bravo to add TQL as an additional insured on the Bravo Policy, such that the "Additional Insureds By Contract" endorsement is not satisfied.

112.    Because TQL does not qualify as an additional insured under the "Additional Insureds By Contract" endorsement in the Bravo Policy, PMAIC has no duty to defend TQL in the Underlying Lawsuit or indemnify TQL for any settlement or judgment entered therein.

113.    In the alternative, to the extent PMAIC's duty to defend TQL is triggered under the Bravo Policy, which PMAIC expressly denies, coverage under the Bravo Policy is subject to an Exclusion g. (Aircraft, Auto Or Watercraft), as amended by the "Exclusion – Volunteer Workers" endorsement, which precludes coverage for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft (1) owned or operated by or rented or loaned to any insured or (2) operated by any "volunteer worker" in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business.

114.    The Bravo Policy defines "auto" to mean "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."

115.    The vehicle driven by Collins at the time of the accident qualifies as an "auto," as that term is defined by the Bravo Policy.

116.    Because the Underlying Lawsuit alleges that the damages suffered by the Underlying Plaintiffs arose out of the maintenance, use or entrustment to others of any "auto" owned or operated by or rented to any insured, Exclusion g. applies to preclude coverage for TQL under the Bravo Policy in relation to the Underlying Lawsuit.

117.    Because Exclusion g. applies to preclude coverage for TQL in relation to the Underlying Lawsuit, PMAIC has no duty to defend TQL in the Underlying Lawsuit or indemnify TQL under the Bravo Policy for any settlement or judgment entered therein.

118.    An actual controversy exists between PMAIC and TQL, and, by the terms and provisions of 28 U.S.C. § 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, PMAIC, respectfully prays that this Honorable Court:

d.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Bravo Policy;

e.      Find and declare PMAIC has no duty under the Bravo Policy to defend TQL in the Underlying Lawsuit or indemnify TQL for any settlement or judgment entered therein; and

f.      Grant PMAIC such other and further relief that the Court deems proper under the facts and circumstances.

Dated: October 13, 2025          Respectfully submitted,

                                        PENNSYLVANIA MANUFACTURERS'
                                        ASSOCIATION INSURANCE COMPANY

                                        */s/      Danielle K. Kegley*
                                        One of Plaintiff's Attorneys

Brian C. Bassett (6285714)
Danielle K. Kegley (6320903)
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY LLP
71 S. Wacker Dr., Ste. 2110
Chicago, Illinois 60606
Telephone: (312) 332-3900
Facsimile: (312) 332-2908
bbassett@tlsslaw.com
dkegley@tlsslaw.com
*Counsel for Plaintiff, Pennsylvania Manufacturers'*
*Association Insurance Company*